UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CLARK KENT JONES,

        Plaintiff,              Case No. 1:15-cv-925

v.                                     Honorable Robert J. Jonker

UNKNOWN LEITER et al.,

        Defendants.
        _____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Clark Kent Jones presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Muskegon Correctional Facility, though the actions about which he complains occurred while he was housed at the Michigan Reformatory. He sues the following RMI employees: Correctional Officers (unknown) Leiter and (unknown) Sabins[1]; Inspector (unknown) Smith; and Warden Carmen Palmer.

On April 23, 2012 at 7:08 p.m., Plaintiff was in the RMI dining area. He was assaulted by prisoner Carter, who injured the left side of Plaintiff's head and left eye area, necessitating medical attention. Plaintiff contends that Defendants collectively are responsible for the assault. More specifically, Plaintiff alleges that Defendant Leiter left Plaintiff and 35 other prisoners unsupervised in the dining area, in violation of MDOC policy. Plaintiff contends that Leiter's absence created an unreasonable risk of harm to Plaintiff and other prisoners.

Plaintiff also alleges that Defendant Sabins was aware that prisoner Carter was extremely angry about being issued a major misconduct ticket for disobeying a direct order, which would result in him losing his prison job. Sabins, however, did not inform either Defendant Leiter or other custody officers of Carter's anger.

In addition, Plaintiff argues that Defendant Palmer was aware that leaving inmates unsupervised was a violation of policy and created inadequate security. Nevertheless, Defendant Palmer denied Plaintiff's grievance on the ground that no policy violations were established.

Further, Inspector Smith apparently assured Plaintiff after the incident that prisoner Carter would be transferred. Smith, however, was not transferred out of the prison, though he was

---

[1] Plaintiff alternately spells Defendant Sabins' name as "Sabins" and "Sabien." The Court uses the spelling set forth in Plaintiff's list of Defendants.

convicted of a misconduct, placed in segregation, and apparently housed in a different area of the prison. Smith told Plaintiff that Carter had not been transferred three and one-half months later, after Plaintiff received anonymous threats. Plaintiff asked Smith to transfer him, but Smith allegedly never responded.

Plaintiff contends that Defendants' action or inaction violated his rights under the Eighth Amendment and constitute the state-law tort of negligence. In a motion to amend (ECF No. 7) and attached document titled "Amended Complaint" (ECF No. 8.), he seeks to supplement his legal claims to include the theory that Defendants Leiter, Sabins and Smith were grossly negligent under Michigan law. He seeks compensatory and punitive damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendant Palmer, other than his claim that Palmer failed to adequately respond to his grievances by finding a violation of policy. Plaintiff also suggests that Defendant Smith is liable for his inadequate investigation of the assault. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active

unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Palmer engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Palmer. For the same reason, Plaintiff fails to state a claim against Defendant Smith for failing to adequately investigate the assault on Plaintiff.

### B. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990) (alleging a failure to protect); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). The deliberate indifference standard has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the risk of harm in issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing

*Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Plaintiff contends that Defendant Leiter should have appreciated the risk that some prisoner would have assaulted another prisoner while Leiter was away from his post. Plaintiff, however, fails to allege that Leiter was aware of any facts from which he should have inferred that prisoner Carter or another inmate presented a substantial risk of serious harm to Plaintiff or another prisoner, much less that Leiter appreciated that risk. Instead, Plaintiff's allegations sound only in negligence, as further illustrated by Plaintiff's concurrent claim of negligence under state law. On these facts, Plaintiff fails to state a claim against Leiter, notwithstanding his belated, conclusory allegation that Defendant Leiter was grossly negligent.

Plaintiff's allegations against Defendant Sabins are even less compelling. Plaintiff contends only that Sabins neglected to tell custody staff that prisoner Carter was extremely angry about his misconduct ticket. Nothing about Carter's anger over a misconduct ticket leads to an

inference that the prisoner presented a serious risk of assault on another prisoner. Nor does Plaintiff's allegation suggest that Sabins actually understood that risk.

Finally, in Plaintiff's remaining allegations against Defendant Smith, Plaintiff contends that Smith promised that Carter would be transferred to another prison, but he was not. In addition, Smith allegedly did not respond to Plaintiff's own request for transfer, though Plaintiff ultimately was transferred. Plaintiff's allegations against Smith fail to rise to the level of deliberate indifference. Given that Plaintiff only became aware that Carter remained at the facility through Smith's comments, it is apparent from the face of the complaint that Carter was placed in a different prison unit than Plaintiff and that Plaintiff was not in contact with Carter. Under these circumstances, no facts suggest that Plaintiff was at serious risk of assault from Carter.

### C.     State-Law Claims

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated MDOC policy and state tort law therefore fail to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue

of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims of negligence and gross negligence will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) for failure to state a claim. Plaintiff's state-law claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

                                                       /s/Robert J. Jonker
                                                       Robert J. Jonker
                                         Chief United States District Judge

Dated:  November 6, 2015