STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARK KENT JONES,

        Plaintiffs,

v.

UNKNOWN LEITER, *et al.*,

        Defendants.
_____/

Case No. 1:15-cv-925

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendant Leiter's motion for judgment on the basis of exhaustion (ECF No. 30), plaintiff's motions for summary judgment (ECF Nos. 37 and 63), and plaintiff's motion to permit discovery (ECF No. 61).

**I.**     **Background**

Plaintiff filed this action in the Eastern District of Michigan, which later transferred the case to this district. This Court dismissed the complaint on initial screening. Plaintiff appealed. The Sixth Circuit affirmed in part, reversed in part, and remanded. *See Jones v. Unknown Leitner*, No. 15-2529 (6th Cir. Sept. 13, 2016). The Sixth Circuit summarized the background and relevant history as follows:

> Seeking monetary relief, Jones sued Michigan Reformatory (RMI) Warden Carmen Palmer, RMI Corrections Officers Leiter and Sabins (sometimes referred to by Jones as Sabien), and RMI Inspector Smith. Jones alleged that the defendants failed to protect him from being assaulted by another inmate, in violation of the Eighth and Fourteenth Amendments and Michigan state law. . . .

1

Jones alleged that, on April 23, 2012 at 7:08 p.m., he was assaulted by inmate Carter while in the dining area at RMI. Jones alleged that the left side of his head and left eye area were injured, requiring medical attention. He claimed that the assault would not have occurred had Leiter not left Jones and thirty-five other prisoners unsupervised in the dining area for fifteen to twenty minutes. He alleged that, in leaving the inmates unattended, Officer Leiter was in violation of prison policy. He further alleged that Leiter and the other defendants were aware that assaults in the kitchen area were common.

The Eighth Amendment requires prison officials to take reasonable measures to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834). To satisfy the objective prong, "the deprivation alleged must be, objectively, 'sufficiently serious,'" and "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Jones adequately pleaded facts that, accepted as true, state a claim that the deprivation was sufficiently serious. Jones alleges that because Leiter left him and thirty-five other prisoners unattended, he was assaulted and received injuries to his head that required medical attention. *Cf. Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Jones also alleged sufficient facts, accepted as true, to show that Leiter subjectively ignored the risk to Jones's safety. To meet this standard, a plaintiff is not required to show that he was "especially likely to be assaulted" by a specific prisoner; rather, deliberate indifference may be demonstrated if the risk is faced by all inmates in that situation. *Farmer*, 511 U.S. at 843; *see also Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). A factfinder may conclude that prison officials knew of substantial risks to the safety of prisoners from the very fact that the risk was obvious. *Farmer*, 511 U.S. at 842.

Jones alleged that Leiter was aware that assaults in the kitchen were common and nonetheless left Jones and the other inmates unattended. If Jones's allegations against Leiter are accepted as true and construed in a light most favorable to him, they could show that Leiter was deliberately indifferent to a substantial risk of serious harm to Jones. As such, the district court wrongly concluded that Jones failed to state an Eighth Amendment claim against Leiter.

*Jones*, No. 15-2529 (ECF No. 17, PageID.62-63).

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after

the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Plaintiff pursued one grievance arising out of this incident to Step III, that being Grievance RMI-12-04-0608-03b ("608"). *See* MDOC Step III Grievance Report (ECF No. 31-3, PageID.138-139); Grievance No. 608 (ECF No. 31-3, PageID.140-144). Defendants point out that this grievance did not name defendant Leiter as required by Policy Directive 03.02.130 ¶ R.

Plaintiff contends that the motion for summary judgment should be denied for two reasons. First, in plaintiff's response and his first motion for summary judgment (which is essentially a second response to defendant's motion), plaintiff contends that defendant's motion should be denied because he simply misspelled Leiter's name as "Lighter." *See* Plaintiff's Response (ECF No. 34, PageID.160-161); Plaintiff's (First) Motion for summary judgment (ECF No. 37). Second, in plaintiff's second motion for summary judgment (ECF No. 63) (which is essentially a third response to defendant's motion), plaintiff cited *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), for the proposition "that a prisoner properly exhausted his administrative

5

remedies against prison officials, even though he failed to name the defendants in the grievance." Plaintiff's Brief (ECF No. 64, PageID.270-271).

In reviewing the grievance, plaintiff did not name Lighter (or Leiter) in his statement of the problem or as the person grieved. Rather, plaintiff listed "Off. Lighter" on the grievance form as someone with whom he attempted to resolve the grievance on April 25, 2012 (along with former defendants Sabin and Palmer, and non-parties "F.S. Clark," "F.S. Supt. Griswold," and "Fac. Mgr. Lance"). *See* Step I (ECF No. 31-3, PageID.143). Pursuant to MDOC Policy Directive 03.02.130:

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

MDOC Policy Directive 03.02.130 ¶ P. As discussed, plaintiff's grievance stated that he attempted to resolve the issue with Lighter [sic], Sabin, Palmer, Clark, Griswold, and Lance. Based on ¶ P, it appears that plaintiff considered these individuals to be "the staff members involved" or "appropriate staff."

However, in stating the issue being grieved, plaintiff did not include the name of "who" he was grieving. *See* MDOC Policy Directive 03.02.130 ¶ R. Rather, plaintiff stated:

> At approximately 17:08 hrs in the food service building dining area Jones #196605 was assaulted by Carter #723231. Jones sustained physical injury and pain as a result of the assault necessitating a request for health services. Pursuant to Humane Treatment and living conditions, Policy Directive, 03.03.130, pages 2 and 3, Jones has a reasonable expectation of safety from assaults, and protection of his life. At 17:08 hrs, this policy directive guidelines [sic] were not met to safeguard Jones from an assault.

Grievance No. 608 at PageID.143.  Notably, plaintiff's Step I grievance did not address the claim alleged in this lawsuit, i.e., that defendant Leiter violated plaintiff's Eighth Amendment rights because Leiter left about 35 prisoners unsupervised for 15 to 20 minutes.  Furthermore, plaintiff never raised this federal constitutional claim against Leiter during the grievance process.

In responding to the Step I grievance, the MDOC investigated the merits of plaintiff's general claim that RMI personnel violated a policy directive regarding humane treatment.  However, that investigation did not involve plaintiff's claim in this lawsuit that Leiter violated his Eighth Amendment rights by leaving nearly three dozen prisoner unsupervised for 15 to 20 minutes.  As an initial matter, the Step I response noted that plaintiff did not report the assault immediately, *i.e.*, former defendant Sabins overheard from other prisoners that plaintiff was assaulted, and that plaintiff "did not report the assault until he was asked by Sabins if he had been assaulted."  Grievance No. 0608 at PageID.144.  The next day, Sabins and Inspector Smith reviewed the video of the incident and prisoner Carter was issued an assault ticket and later found guilty.  *Id*.  The grievance reviewers found that plaintiff did not receive treatment different from other prisoners at the facility, noting that plaintiff did not report that he was assaulted until two hours after the fact, when he was questioned by staff.  *Id*.  The grievance was denied because the investigation did not support any policy violations.  *Id*.

In his Step II appeal, plaintiff did not address any actions by defendant Leiter (or Lighter).  Rather, plaintiff reiterated that there were policy violations and that, "There is a high probability [sic] if prisoners were not left unattended/unsupervised [sic].  The assault on Jones would not have occurred [sic]."  *Id*. at PageID.141.  In the Step II response, the MDOC's investigation found, among other things, that there was no violation of policy, that "on the day of the assault RMI was staffed in accordance with facility staffing charts," and that "[t]he assault did

7

go unreported by Prisoner Jones until staff intervened and interviewed the grievant." *Id*. at PageID.142.  Finally, plaintiff's Step III appeal did not reference defendant Leiter (or Lighter), but simply stated that "[r]espondents reply to Step II avoids admitted there was a violation of MDOC policy as a result of the assault when its [sic] evident there has been a violation because the facts reflect prisoners were unsupervised." *Id*. at PageID.141.  The Step III response affirmed the Step II decision, after noting that plaintiff's "issue was in fact considered and appropriately investigated" and that "there is no additional information or basis for relief at Step III." *Id*. at PageID.140.

In reviewing plaintiff's responses and motions, the Court does not consider plaintiff's misspelling of Leiter's name to be fatal to exhaustion.  The issue before the Court is whether plaintiff's grievance served the purpose of exhaustion, i.e., whether plaintiff completed the administrative review process in accordance with the deadlines and other applicable procedural rules with respect to his claim against defendant Leiter.  *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.  As discussed, plaintiff stated in his Step I grievance that he tried to resolve the issue with Leiter and five other staff members.  Under ¶ P, plaintiff apparently considered these six individuals to be "the staff member[s] involved."  That being said, plaintiff's grievance did not state the problem being grieved as a constitutional claim against Leiter for leaving dozens of prisoners unsupervised.  Rather, plaintiff stated a general violation of a policy directive involving humane treatment of prisoners, which the MDOC investigated.

"The point of the PLRA exhaustion requirement is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey*, 603 F.3d at 324 (internal quotation marks omitted).  Here, the MDOC did not have a

fair opportunity to address the claim in this lawsuit. While plaintiff's grievance exhausted a claim for an alleged violation of an MDOC policy directive involving humane treatment of prisoners, plaintiff's grievance did not exhaust a federal constitutional claim against Leiter.

Finally, plaintiff relies on the Sixth Circuit's decision in *Reed-Bey* for the proposition that a prisoner can properly exhaust a claim even when the prisoner fails to name the defendant in a grievance. Plaintiff's reliance on *Reed-Bey* is misplaced. *Reed-Bey* involved a scenario in which the MDOC overlooked a procedural failing and chose to address the prisoner's grievance on the merits. *See Reed-Bey*, 603 F.3d at 324. In that opinion, the Sixth Circuit reasoned that "the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim." *Id*. at 325. In *Lee v. Willey*, 789 F.3d 673, 680-81 (6th Cir. 2015), the Court clarified that its decision in *Reed-Bey* did not exempt a prisoner from the requirement that a grievance must name the person grieved. The issue in *Lee* involved whether the prisoner, Larry Lee, exhausted grievances against Dr. Mehra, when Lee did not name the doctor in the grievances as required by the MDOC Policy Directives. The Sixth Circuit concluded that Lee could not rely on the decision in *Reed-Bey* to salvage grievances which did not refer to Dr. Mehra's alleged actions:

> To be sure, this court has refused to enforce procedural requirements when "prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits." *Reed–Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir.2010). This principle provides no safe harbor for Lee, however, since the denial of the Step II grievances made no mention of Dr. Mehra; the Step III grievances filed by Lee failed to mention Dr. Mehra; and the Step III denials concerned only the merits of the claims raised in the Step I grievances against Thomas and Zischke. *See Cook v. Caruso*, 531 Fed.Appx. 554, 562–63 (6th Cir.2013) ("For *Reed–Bey's* holding to apply, Cook would have had to receive 'merits-based responses at each step.'" *Reed–Bey*, 603 F.3d at 326 (emphasis added).). Thus, it was not error for the district court to conclude that Lee failed to exhaust his administrative remedies with respect to the claim against Dr. Mehra.

9

*Lee*, 789 F.3d at 680-81. Similarly, plaintiff failed to mention a claim that Leiter violated his Eighth Amendment rights by leaving about three dozen prisoners unsupervised in his grievance or his appeals at Steps II and III. Based on this record, plaintiff failed to properly exhaust his Eighth Amendment claim against defendant Leiter. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Lee*, 789 F.3d at 680-81. Accordingly, defendant Leiter's motion for summary judgment (ECF No. 30) should be granted and plaintiff's motions for summary judgment (ECF Nos. 37 and 63) should be denied.

### III.    Plaintiff's motion for discovery

After this case was re-opened on remand, defendant filed his motion for summary judgment for lack of exhaustion, and plaintiff filed both a response to the motion and his first motion for summary judgment. All of this occurred before the Court entered a case management order (CMO). About 1½ months after the Court entered the CMO, plaintiff filed his second motion for summary judgment and a motion for an order to permit discovery limited to exhaustion (ECF No. 61). Plaintiff based his motion for discovery on ¶ 2(c) of the CMO, which provides that "If any defendant files a summary judgment motion raising only failure to exhaust remedies, a period of 45 days will be allowed for plaintiff's discovery, limited to the exhaustion issue only. Plaintiff's response to the motion will be due 28 days after the close of the limited discovery period." CMO (ECF No. 42, PageID.213) (emphasis omitted). Plaintiff contends that he needs discovery to establish that "plaintiff's grievance was in fact directed to the defendant because, on the day of the assault which gave rise to the grievance, on April 23, 2012, the defendant was the only correctional officer specifically assigned to the Michigan Reformatory Kitchen with the last name Leiter" and that "[b]y establishing these facts through the needed information, plaintiff can

10

prove that he properly exhausted his grievance against the defendant…" Plaintiff's Decl. (ECF No. 62, PageID.262).

Plaintiff is correct that the CMO gives him a 45-day window to perform discovery related to exhaustion.  In retrospect, the Court should have tailored the CMO to reflect that defendant had filed a motion for summary judgment based on exhaustion and that plaintiff had filed both a response to that motion and his own motion for summary judgment on exhaustion. Based on this record, plaintiff's own actions indicate that he did not require any discovery on the narrow issue of whether he properly exhausted Grievance No. 608.  Furthermore, even if the Court assumed the facts which plaintiff wants to confirm through discovery, i.e., that defendant Leiter was the only correctional officer specifically assigned to the RMI Kitchen on the date of the assault, these facts do not change the Court's conclusion with respect to exhaustion because plaintiff's grievance did not address his present claim against Leiter. Accordingly, plaintiff's motion for discovery (ECF No. 61) should be denied.

### IV. Recommendation

For these reasons, I respectfully recommend that defendant Leiter's motion for summary judgment on the basis of exhaustion (ECF No. 30) be **GRANTED**, that plaintiff's motions for summary judgment (ECF Nos. 37 and 63) be **DENIED**, that plaintiff's motion to permit discovery (ECF No. 61) be **DENIED**, and that this case be **DISMISSED**.

Dated:  January 19, 2018                    /s/ RAY KENT
                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

11